Chris Martinez (11152)
Kristen Olsen (15214)
Dorsey & Whitney LLP
111 South Main Street, Suite 2100
Salt Lake City, Utah 84111
Telephone: (801) 933-7360
martinez.chris@dorsey.com
neville.kimberly@dorsey.com

*Attorneys for Defendants United Health Group, Inc.
United Healthcare of Utah, Inc., and United
Behavioral Health, Inc.*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| AVALON HILLS HEALTH CARE, INC., a Utah corporation, | **NOTICE OF REMOVAL** |
| Plaintiff, | Case No.: 1:19cv00009_____ |
| vs. | Honorable Dustin B. Pead_____ |
| UNITED HEALTH GROUP, INC., a Delaware corporation, OPTUM HEALTH, INC., a Delaware corporation, UNITED HEALTHCARE OF UTAH, INC., a Utah corporation, UNITED BEHAVIORAL HEALTH, a division of UNITED HEALTH GROUP, INC., and operating under the brand OPTUM, | |
| Defendants. | |

Defendants United Healthcare of Utah, Inc., United Behavioral Health, Inc., and United Health Group, Inc. (collectively, "Defendants") hereby remove this action from the First Judicial District Court, Cache County, Utah, pursuant to 28 U.S.C. §§ 1446, 1332, and 1441, based upon

diversity and federal question jurisdiction. In support of their removal, Defendants state as follows:

1. Plaintiff filed a Complaint in the First Judicial District Court, Cache County, Utah on or about December 4, 2018. *See* Complaint (hereinafter, "Complaint"), attached hereto as **Exhibit A.**

2. Defendant United Behavioral Health, Inc. was served with the Complaint on January 16, 2019. *See* Summons, attached hereto as **Exhibit B**.

3. Defendant United Healthcare of Utah, Inc. was served with the Complaint on January 16, 2019. *See id.*

4. Plaintiff attempted to serve United Health Group, Inc. Plaintiff's attempt failed because Plaintiff did not serve the agent for United Health Group, Inc. Instead, Plaintiff served a summons for United Health Group, Inc. on the registered agent for United Healthcare of Utah, Inc. Thus, upon the date of filing this motion, Defendants United Health Group, Inc. has not been properly served. Optum Health, Inc., an entity that does not exist, has not been served.

**5.** All "process, pleadings, and orders served upon" Defendants are attached hereto as Exhibits A and B.

6. Defendants are filing this notice of removal within 30 days after service of summons on January 16, 2019, rendering this notice timely. *See* 28 U.S.C. § 1446(b)(1).

<strong><u>Citizenship of the Parties</u></strong>

1. Plaintiff alleges in its Complaint that it is a Utah corporation organized under the laws of the state of Utah. *See* Complaint ¶ 1.

2. Defendant UnitedHealth Group Incorporated, improperly named in Plaintiff's complaint as United Health Group, Inc. is a Delaware corporation with its principal place of business in Minnesota. *See* Complaint ¶ 2.

3. According to the Complaint, Defendant Optum Health, Inc. ("Optum Health") is a Delaware corporation with its principal place of business in Minnesota. *See* Complaint ¶ 3. Defendants are not aware of any company called Optum Health, Inc. and Plaintiff has not accomplished any purported service on this non-entity.

4. United Behavioral Health, Inc. is a Delaware corporation with its principal place of business in Minnesota. *See* Complaint ¶ 4.

5. Defendant UnitedHealthcare of Utah, Inc., improperly named in Plaintiff's complaint as United Healthcare of Utah, Inc. ("Utah UHC"), is a Utah Corporation with its principal place of business in Utah. *See* Complaint ¶ 5.

### **Fraudulent Joinder of UnitedHealthcare of Utah, Inc.**

6. While UHC Utah is diverse from the other Defendants, it is not diverse from the Plaintiff and it is a "local" defendant as a citizen of Utah, and its joinder, if proper, would prevent the proper Defendants from removing due to 28 U.S.C. § 1441(b)(2). UHC Utah, however, has been fraudulently and improperly joined for the purposes of defeating and undermining this Court's diversity jurisdiction and depriving Defendants of their right to remove.

7. "Fraudulent joinder is a judicially created doctrine that provides an exception to the requirement of complete diversity." *Long v. Halliday*, No. 2:17-CV-1025-DB, 2018 WL1054368, at *7 (D. Utah Feb. 23, 2018). Fraudulent joinder provides that "joinder of a

resident defendant against whom no cause of action is pled, or against whom there is in fact no cause of action, will not defeat removal." *Id.* at *7-8 (*quoting Roe v. General Life Ins., Col, & Phillips Petroleum Co.*, 712 F.2d 450, 452 (10th Cir. 1983)).  "The joinder of a nondiverse party is 'fraudulent' when it serves no purpose other than 'to frustrate federal jurisdiction.'" *Id.* at 8 (*citing Dodd v. Fawcett Publns, Inc.*, 329 F.2d 82, 85 (10th Cir. 1964)).  For purposes of assessing complete diversity of citizenship in a removal proceeding, the citizenship of any fraudulently joined defendant should be ignored.  *See id*.

8. To establish fraudulent joinder, the removing party must demonstrate: (1) actual fraud of jurisdictional facts, or (2) the inability of the plaintiff to establish an actual cause of action against the non-diverse defendant in state court.  *See id*.  To aid in the Court's analysis, it may consider affidavits or other evidence on the issue of whether a particular defendant's joinder is "fraudulent."  *Dodd, Inc.*, 329 F.2d at 85.

9. Applying these established principles in this case leads to the conclusion that UHC Utah was fraudulently joined to defeat removal.

10. Plaintiff sets forth five[1] causes of action in its Complaint, only one of which—the breach of contract claim—is specifically alleged against "UHC Utah."[2]  *See* Complaint at p. 8.  Plaintiff cannot establish a breach of contract claim against UHC Utah because UHC Utah is not a party to the Single Case Agreements ("SCA") that Plaintiff claims were breached.  *See* Complaint, Exhibits A-F (in which the SCAs state that each Patient is "covered by OptumHealth Behavioral Solutions ("Optum Health")" and that the agreement is between "OptumHealth and

---

[1] The Complaint's causes of action are misnumbered—the Fourth Cause of Action is titled "Sixth Cause of Action" and the Fifth Cause of Action is titled "Seventh Cause of Action."  *See* Complaint at pgs. 10-11.
[2] The second, third, and fourth cause of action are alleged against other named Defendants and "UBH Utah," which is not a defined term in the Complaint nor is it a named Defendant in this action.

4

the undersigned healthcare professional or facility."). Moreover, there are no allegations in the Complaint that UHC Utah played any role in the alleged breaches of the SCAs. *See, generally*, Complaint. Accordingly, Plaintiff's breach of contract claim against UHC Utah is not cognizable under Utah law. *See Catlin v. Salt Lake City Sch. Dist.*, No. 2:08-cv-362-CW-PMW, 2013 U.S. Dist. LEXIS 188782, at *16 (D. Utah Jan. 25, 2013) (dismissing a breach of contract claim because "[Defendant] cannot be liable for any alleged breach of a contract to which he was not a party.").

11. Because Plaintiff is unable to establish a breach of contract claim against UHC Utah, the only non-diverse defendant in this case, this Court should ignore UHC Utah's citizenship for purposes of determining diversity jurisdiction. *See Long*, 2018 WL1054368, at *8. In so doing, this Court must conclude that this case is between citizens of different states, satisfying the diversity requirements under 28 U.S.C. § 1332(a)(1).

12. Even if Plaintiff intended to bring additional causes of action against UHC Utah—which it failed to do—the facts alleged in the Complaint simply do not support any claims against the Utah-based company. Plaintiff's second cause of action seeks a declaratory judgment interpreting the SCAs and Optum Guidelines *See* Plaintiff's Complaint, p. 8. Once again, UHC Utah is not a party to the SCAs, and Plaintiff has not alleged any conduct by UHC Utah relating to those agreements or the Optum Guidelines. *See, generally*, Complaint. Thus, the second cause of action cannot be brought against UHC Utah.

13. The third cause of action alleges that Defendants violated Utah Code Ann. § 31-A-26-301.6(10). The specific conduct that allegedly violated Utah Code Ann. § 31-A-26-301.6(10) has nothing to do with UHC Utah or any UHC Utah employees. *See* Complaint, ¶¶

64-65. Throughout the Complaint, the Plaintiff names specific individuals who allegedly engaged in conduct in violation of the Utah Code, but none of the individuals that Plaintiff identifies actually worked for Utah UHC. *See* Declaration of Ngoc Han S. Nguyen, ¶ 3, attached as Exhibit C.

14. Similarly, the fourth and fifth causes of action allege that certain "agents" of the Defendants engaged in defamation and false statements, but as set forth above, those individuals named in the Complaint were never employed by UHC Utah. *See id.*, ¶ 3. Thus, even if Plaintiff had brought additional claims against UHC Utah, the facts and allegations set forth in the Complaint simply do not state *any* cause of action against UHC Utah in state court.

15. Based on the foregoing, it is apparent from the pleadings that the joining of UHC Utah serves no other purpose than to frustrate federal jurisdiction. *See Long*, 2018 WL1054368, at *7-8.

16. Applying the fraudulent joinder analysis, this action is between citizens of different states, thereby satisfying the diversity of citizenship requirements. *See* 28 U.S.C. § 1332(a)(1).

**Amount in Controversy**

17. According to the Complaint, Plaintiff seeks monetary relief "in an amount to be proven at trial, but not more than $75,000.00 exclusive of interest and awardable costs and attorney's fees." *See* Complaint at p. 12. Plaintiff's requested relief, however, is not limited to monetary damages. Plaintiff is also seeking relief in the form of declaratory judgments and injunctive relief—each of which would carry a high cost of compliance for Defendants. *See id.*

18. In the Tenth Circuit, the amount in controversy is not measured by monetary damages alone, but courts may also consider the "costs of compliance with any declaratory or injunctive relief." *Lovell v. State Farm Mut. Auto. Ins. Co.*, 466 F.3d 893, 896 (10th Cir. 2006).

19. In total, the amount in controversy—should Defendants be required to comply with the injunctive relief and declaratory judgments—far exceeds the $75,000.00 jurisdictional minimum set forth in 28 U.S.C. § 1332(a).

20. Plaintiff seeks relief in the form of a declaratory judgment "declaring the Optum Level of Care Guidelines as void and not a basis for the denial of care of Avalon Hills patients or the reimbursement to Avalon Hills for services provided to Defendants' insureds, beneficiaries, or members." *See* Complaint at p. 12. Complying with this judgment would require Defendants to recreate and/or rewrite its Level of Care Guidelines (the "Guidelines").

21. The Guidelines are a set of objective and evidence-based behavioral health criteria used by medical necessity plans to standardize coverage determinations, promote evidence-based practices and support patient's recovery, and wellbeing. These Guidelines are the result of years of experience, analysis, and evidence-based research and evidence. They have been created and revised by a multi-disciplinary team over the course of many years. *See* Declaration of Jeffrey C. Uy, at ¶ 3, attached as Exhibit E. The cost associated with revising and / or replacing the Guidelines, and then distributing new Guidelines, training on the new Guidelines, and otherwise implementing them is substantial. When the Guidelines have been revised in the past, it has required a team of clinicians to devote significant time reviewing the current scientific evidence base and analyzing proposed changes to ensure that any changes are consistent with the terms of the benefit plans and will continue to promote evidence-based

practices and support patient recovery and wellbeing. The cost of a court order requiring Optum to change or replace its Guidelines and then distribute, train on, and implement those Guidelines across Optum's network would greatly exceed $75,000. *Id.* at ¶ 4.

22. Plaintiff also seeks relief in the form of a judgment declaring that "Defendants' policies and procedures for processing claims and reimbursement for services are unreasonable and unfair, and that Defendants fail and refuse to make policies and procedures regarding coverage and claims and reimbursement for services readily available and reasonably understandable so as to allow providers the ability and opportunity to reasonably and efficiently provide services and process claims." *See* Complaint at p. 12. If granted, this judgment would also require Defendants to recreate its Level of Care Guidelines. As explained above, this would require Defendants to incur costs and expenses well over the $75,000.00 jurisdictional minimum. *See* Exhibit E, at ¶ 4.

23. Plaintiff also seeks relief in the form of a "judgment pursuant to Utah Code Ann. § 78B-6-401 et seq. and Rule 57 of the Utah Rules of Civil Procedure, declaring that Defendants cannot suspend Avalon Hills' authorization based only upon an alleged failure to comply with the 'Clinical Best Practices' section of the Optum Guidelines." *See* Complaint, p. 12. If granted, the cost of complying with this judgment would far exceed $75,000.00. And Plaintiff is also asking this court to issue injunctive relief in the form of a preliminary and permanent injunction that would, among other things, require Defendants to (i) "adopt and follow independently accepted medical and clinical standards of care for persons suffering from eating disorders and related behavioral disorders and treated by Plaintiff in the state of Utah," (ii) require Defendants to "honor the contractual obligations and related obligations for reimbursement for services

provided under Defendants' insurance coverage with patients treated by Avalon Hills," and (iii) compel Defendants to "accept and follow mental health procedures and care in accordance with prevailing medical and clinical standards in the state of Utah."  Boiled down, Plaintiff is again asking the Court to order Defendants to rewrite or recreate its Guidelines.  If this preliminary and permanent injunctive relief were to be granted, as explained above, the compliance costs would far exceed the $75,000.00 jurisdictional minimum.  *See* Exhibit E, ¶ 4.

24. Because Plaintiff seeks monetary relief, declaratory relief, and temporary and permanent injunctive relief, Plaintiff is seeking damages that far exceed the $75,000.00 jurisdictional minimum.  Therefore, the matter in controversy exceeds the jurisdictional minimum set forth in 28 U.S.C. § 1332(a).

## Federal Question Jurisdiction

25. In addition to diversity jurisdiction, this Court can exercise federal question jurisdiction over Plaintiff's claims because the Complaint alleges several causes of action that are either completely or expressly preempted by the Employee Retirement Income Security Act of 1974 ("ERISA").

26. Federal question jurisdiction exists over state law claims when "plaintiff's right to relief depends on the resolution of a substantial question of federal law." *Franchise Tax Bd. of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983); *see also Grable v. Sons Metal Productions, Inc. v. Darue Engineering & Manufacturing*, 545 U.S. 308, 314 (2005).

27. ERISA is one of only a few federal statutes that "so pervasively regulate their respective areas that they have complete preemptive force," and thus, causes of action within the

scope of ERISA's civil enforcement provision are removable to federal court. *Salzer v. SSM Health Care of Okla. Inc.*, 762 F.3d 1130, 1134 (10th Cir. 2014).

28. A cause of action falls under ERISA's civil enforcement provision if (1) a plaintiff could have brought its claim under ERISA § 502(a)(1)(B) and (2) no other independent legal duty is implicated. *Id.* ERISA's civil enforcement provision allows a plan participant or beneficiary to bring a civil action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." ERISA § 502(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B).

29. When a plaintiff, for example, brings suit to rectify an improper denial of benefits promised under an ERISA-regulated plan or to recover based on the improper administration of benefits under an ERISA-regulated plan, the state causes of action necessarily fall within the scope of ERISA § 502(a)(1)(B), and therefore, they are completely preempted and removable to federal court. *See Salzer*, 762 F.3d at 1137-38; *see also Aetna Health Inc. v. Davila*, 542 U.S. 200, 124 S. Ct. 2488, 159 L. Ed. 2d 312, 213-14 (2004) ("ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"); *Renaissance Ranch Outpatient Treatment, Inc. v. Golden Rule Ins. Co.*, No. 2:16-cv-00872-DN, 2017 U.S. Dist. LEXIS 96322, at *7 (D. Utah June 20, 2017) ("[T]o the extent [the state law causes of action] seek to recover unpaid benefits under plans that are governed by ERISA, they are preempted by ERISA."); *Carter v. Amax Coal Corp.*, 748 F. Supp. 812, 817-18 (D. Utah 1990) ("[P]laintiffs' state law claims arise from the administration of

benefits under a plan and are thereby preempted even under a narrow interpretation of ERISA's preemption provision.").

30. As set forth below, Plaintiff's claims are preempted by ERISA because they seek relief based on the administration and denial of benefits under ERISA-regulated plans. *See id.*

31. First, Plaintiff admits that it never directly entered into an MSA with Defendants for services of at least one patient—M.L. *See* Complaint, ¶ 30. Thus, Plaintiff's right to recover benefits on behalf of M.L. stems solely from M.L.'s ERISA-regulated plan and not any independent contract with a defendant. Plaintiff necessarily implicates ERISA when it seeks to recover from a denial of benefits on an ERISA-regulated plan solely as a beneficiary. Thus, this Court can exercise federal question jurisdiction over all claims relating to M.L.'s benefits.

32. Second, Plaintiff's second cause of action seeks a declaratory judgment interpreting the SCAs and the Optum Level of Care Guidelines so that "claims can be fairly and reasonably be [sic] processed and so that Avalon Hills may determine and enforce its rights under the patient **policies** and/or the SCA Agreements." Complaint, ¶ 60 (emphasis added). Each of the patients at issue are covered by an employee health benefit plan, which is regulated by ERISA as a matter of law. *See* Exhibit C, ¶ 4. And Plaintiff specifically "contends that when making coverage determinations, Optum must reference the specific benefits plan of each patient." Complaint, ¶ 55. In other words, Plaintiff is asking the Court to find that the terms of the Patient's plans control and that those plans provide for payment to Plaintiff. Despite Plaintiff's efforts to couch this claim in state law, this claim to recover benefits under the terms of the patients' ERISA-regulated plans, to enforce its rights under the terms of the plans, and to clarify its rights to future benefits under the terms of the plans is the exact type of claim for plan

11

benefits that is preempted by ERISA's civil enforcement provision. *See* 29 U.S.C. § 1132(a)(1)(B).

33. Thus, just as in *Salzer*, Plaintiff's second cause of action is completely preempted by ERISA. *Salzer*, 762 F.3d at 1138 ("Because [Plaintiff's] tortious interference claim is one seeking to enforce rights under the terms of an ERISA plan, and does not rest on a legal duty independent of an ERISA plan's terms, Davila mandates complete preemption of that claim.").

34. Similarly, Plaintiff's third cause of action, in which Plaintiff alleges Defendants violated Utah Code § 31A-26-301.6(10)(g), is preempted by ERISA. *See* Complaint, ¶¶ 61-68. *See also* 29 U.S.C. § 1132(a)(1)(B). Although framed as a state-law claim, Plaintiff's third cause of action alleges that Plaintiff was damaged because Defendants improperly denied patient's claims based on the Optum Guidelines, rather than "on any specific provision of any patient's benefits plan." *See* Complaint, ¶¶ 64-66. Once again, Plaintiff's efforts to recover benefits denied to it under an ERISA-regulated plan fall within the civil enforcement provision of ERISA, and are therefore preempted. *See* 29 U.S.C. § 1132(a)(1)(B). Plaintiff also seeks to permanently prohibit Defendants from denying such claims in the future—thus attempting to clarify rights to future benefits under its patients' ERISA-regulated plans—which is also completely preempted by ERISA's civil enforcement provision. 29 U.S.C. § 1132(a)(1)(B).

35. Furthermore, to the extent Utah Code Ann. § 31A-26-301.6(10) governs the administration of ERISA-regulated plans, the state law is expressly preempted by ERISA. *See* 29 U.S.C. § 1144; *Fuller v. Norton*, 86 F.3d 1016, 1020-21 (10th Cir. 1996) ("Preemption has been applied very broadly, and prevents states from applying a wide body of law to employee benefit plans, including laws that only indirectly affect ERISA plans."); *Pilot Life Ins. Co. v.*

*Dedeaux*, 481 U.S. 41, 45-46, 95 L. Ed. 2d 39, 107 S. Ct. 1549 (1987) ("The express pre-emption provisions of ERISA are deliberately expansive and designed to establish pension plan regulation as exclusively a federal concern." (quotation omitted)); 29 U.S.C. § 1144(a) ("[ERISA] shall supersede any and all State laws insofar as they may now or hereafter relate to any [ERISA] plan.").

36. Federal jurisdiction over any one claim is sufficient to support removal of all claims. *See* 28 U.S.C. § 1441(a) (permitting removal of any case over which district court could have exercised original jurisdiction); *Salzer*, 762 F.3d at 1138-39; *Gilmore v. Weatherford*, 694 F.3d 1160, 1176 (10th Cir. 2012) ("[I]f any one claim within Plaintiffs' complaint supports federal question jurisdiction, a federal court may assert jurisdiction over all the claims, including any alleged state-law claims, arising from the same core of operative facts.").

37. Accordingly, because this Court can exercise federal question jurisdiction over at least one of Plaintiff's claims—including its second and third causes of action and all claims seeking damages for denial of M.L.'s ERISA-regulated benefits—this Court can exercise jurisdiction over all of Plaintiff's claims. *See* 29 U.S.C. § 1441(a).

### Additional Procedural Requirements

38. All Defendants, properly served with the Complaint, hereby join in and consent to the removal of this Action.

39. Therefore, the requirement under 28 U.S.C. § 1446(b)(2) that "all defendants who have been properly joined and served must join in or consent to the removal of the action" is satisfied.

14

40. A copy of this Notice of Removal will be served upon plaintiffs through their attorneys of record and upon the Clerk of the First Judicial District Court of Utah County, Utah, as provided by 28 U.S.C. § 1446(d).

41. The State Court docket is attached hereto as Exhibit D.

WHEREFORE, notice is given that this action is removed from the Utah Fourth Judicial District Court, Utah County, to the United States District Court for the District of Utah.

DATED this 6th day of February, 2019.

Respectfully submitted,

*/s/ Chris Martinez*
Chris Martinez
Kristen Olsen
*Attorneys for Defendants*